**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
      jsmith@bursor.com
      ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA BAYOL and BRUCE VERBECK, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>     v.<br><br>HEALTH-ADE LLC, and WHOLE FOODS MARKET CALIFORNIA, INC.,<br><br>                          Defendants. | Case No. 3:18-cv-01462 MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>Date:       April 19, 2019<br>Time:      9:00 a.m.<br>Courtroom: 7, 19th Floor<br><br>Judge: Hon. Maxine M. Chesney |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 19, 2019 at 9:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 7, 19th Floor, San Francisco, California 94102 in the courtroom of Judge Maxine M. Chesney, Plaintiffs Gabriela Bayol and Bruce Verbeck ("Plaintiffs"), by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation of Class Action Settlement ("Settlement Agreement"), (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel for the Class, (iii) establish procedures for giving notice to members of the Class, (iv) approve forms of notice to Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement, Provisional Certification of Nationwide Settlement Class, and Approval of Procedure for and Form of Notice, the accompanying Declarations of Yeremey Krivoshey and Gary Cooperman and attachments thereto, including the Settlement Agreement, the Declarations of Gabriela Bayol and Bruce Verbeck, the Declarations of William W. Wickersham and Ron Resnikoff, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated:  March 15, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:___*/s/ Yeremey Krivoshey*___
             Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940

Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com
        ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9112
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ................................................................................................1

II.   PROCEDURAL BACKGROUND ......................................................................3

III.  THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS ...............................................................................5

IV.  TERMS OF THE PROPOSED SETTLEMENT ...............................................7

    A.   Monetary Relief for Class Members .....................................................7

    B.   Injunctive Relief....................................................................................9

    C.   Payment of Incentive Awards and Attorneys' Fees, Costs and Expenses ..............................................................................................10

         1.   Attorneys' Fees, Costs, and Expenses Sought.........................10

    D.   Payment of Notice and Administrative Fees ......................................13

         1.   The Settlement Administration Selection Process Was Fair And Reasonable ....................................................................13

V.   THE COURT SHOULD PRELIMNARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE................................................................................................14

    A.   Strength of Plaintiffs' Case .................................................................15

    B.   Risk of Continuing Litigation..............................................................15

    C.   Risk of Maintaining Class Action Status............................................16

    D.   The Extent of Discovery and Status of Proceedings ..........................17

    E.   Experience and Views of Counsel.......................................................17

VI.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS, AND ENTER THE PRELIMINARY APPROVAL ORDER ...............................18

    A.   The Proposed Settlement Class Should Be Certified ..........................18

         1.   The Class Satisfies Rule 23(a).................................................19

             a.   Numerosity ..................................................................19

             b.   Commonality................................................................19

             c.   Typicality.....................................................................20

             d.   Adequacy .....................................................................20

         2.   The Class Satisfies Rule 23(b)(3).............................................21

             a.   Common Questions of Law and Fact Predominate.........................21

             b.   A Class Action Is the Superior Mechanism for Adjudicating This Dispute................................................22

         3.   The Class Also Satisfies Rule 23(b)(2) ....................................23

VII.  THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED ........................................................23

VIII.   CONCLUSION ...................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alaniz v. California Processors, Inc.,*
  73 F.R.D. 269 (N.D. Cal. 1976) ............................................................... 5

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................ 18, 22, 23

*Arnold v. United Artists Theatre Circuit, Inc.,*
  158 F.R.D. 439 (N.D. Cal. 1994) ........................................................... 19

*Beaver v. Alaniz,*
  439 U.S. 837 (1978) ........................................................................... 5

*Bos. & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.,*
  778 F.2d 890 (1st Cir. 1985) ................................................................ 13

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) .......................................................... 6

*Consumer Privacy Cases,*
  175 Cal. App. 4th 545 (2009) .............................................................. 11

*Cosgrove v. Sullivan,*
  759 F. Supp. 166 (S.D.N.Y. 1991) ...................................................... 13, 14

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ............................................. 16

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) ............................................................ 23, 24

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................. 15

*Gen. Tel. Co. of the Southwest Falcon,*
  457 U.S. 147 (1982) .......................................................................... 20

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ....................................................... passim

*Hartless v. Clorox Co.,*
  273 F.R.D. 630 (S.D. Cal. 2011) .......................................................... 11

*In re Apple Computer Sec. Litig.,*
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................... 16

*In re Beverly Hills Fire Litig.,*
  639 F. Supp. 915 (E.D. Ky. 1986) ........................................................ 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................ 12

*In re Cenco Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ......................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................................ 17

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 17

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................. 6, 11

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......................................................................... 5, 6

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 5

*Johnson v. Triple Leaf Tea Inc.*,
2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ...................................................... 17

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) .................................................................................. 12

*Lealao v. Beneficial California, Inc*,
82 Cal. App. 4th 19 (2000) ................................................................................... 11

*Lilly v. Jamba Juice Co.*,
2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ...................................................... 23

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ........................................................................... 11

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*,
1986 WL 10791 (E.D. Pa. Sept. 30, 1986) ........................................................... 13

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .................................................................... 6, 7, 8, 15

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ............................................................................................... 6

*Rabin v. Concord Assets Grp., Inc.*,
1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ........................................................ 13

*Retta v. Millennium Prods., Inc.*,
2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) .......................................... 8, 9, 10, 11

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................................ 13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................... 15, 16, 18

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................ 19

*State of Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ............................................................................ 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................... 11, 21

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................... 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..................................................................................... 19

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ............................................................................ 11

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ...................................................... 11

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................................ 21

**STATUTES**

New York General Business Law § 349 ............................................................... 3, 22

New York General Business Law § 350 ............................................................... 3, 22

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. passim

Fed. R. Civ. P. 30(b)(6) ...................................................................................... 4, 17

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) .............. 5, 13

Manual for Complex Litigation, § 21.312 (4th ed. 2004) ...................................... 5

1

2

## I.   INTRODUCTION

Plaintiffs Gabriela Bayol and Bruce Verbeck ("Plaintiffs"), by and through Class Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  The Settlement Agreement (hereafter, "Settlement") and its exhibits are attached as Exhibit 1 to the Declaration of Yeremey Krivoshey ("Krivoshey Decl."), filed herewith.

Plaintiffs' operative complaint, the Amended Class Action Complaint, Dkt. No. 16, alleges that Defendant Health-Ade LLC ("Health-Ade") mislabeled its kombucha beverages by (1) selling the Subject Products as non-alcoholic when those products allegedly contain more alcohol than permitted for non-alcoholic beverages; and (2) understating the sugar content of the Subject Products on the labels of the Subject Products.  The lawsuit also alleges that Defendant Whole Foods Market California, Inc. violated the law by reselling the Health-Ade's mislabeled products.  Defendants have vigorously denied these allegations and asserted numerous defenses.

After two full-day mediations before Jill R. Sperber, Esq. of Judicate West, undertaking a thorough investigation, including several rounds of laboratory testing of the Subject Products, and protracted discovery, the parties have reached a settlement that provides a real and substantial monetary benefit to the Class.  Defendants have agreed to provide up to $3,997,500 to pay claims for those who purchased on or more flavors of the Subject Products on a claims-made basis.  Class Members can receive a $4.00 cash award for each Subject Product the Authorized Claimant purchased during the Class Period, up to a maximum of ten (10) claims (or $40.00 in cash) if the Authorized Claimant does not provide Proof of Purchase.  Authorized Claimants who claim more than $40.00 in cash awards must submit Proof of Purchase establishing their purchase during the Class Period of each Subject Product claimed and may receive up to $80.00 in cash awards based on the retail value of the Subject Products shown in the Proof of Purchase.  This is an excellent result for Class Members, given that the Settlement effectively provides a full refund to Class Members that submit claims.  *See supra* Argument § VI.A.

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement.  *See* Krivoshey Decl., Ex. 1.

The Settlement also provides significant injunctive relief.  Health-Ade has agreed to (1) maintain on the labels of the Subject Products the following warning statement: "Kombucha should not be consumed if left unrefrigerated for an extended period of time.  Pregnant/breast feeding? Consult your doctor.  Due to natural fermentation, there may be trace amounts of alcohol and small pieces of culture"; (2) effectuate a formulation change that will control the variability of the alcohol and sugar content in its products to ensure that the declared sugar and alcohol content on such products' labels do not vary to a greater extent than allowed by federal or state labeling standards; and (3) regularly test samples of its products using a third-party laboratory to ensure compliance with federal and state labeling standards and to ensure the accuracy of the representations regarding the sugar content of its products.

As in any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiffs now request this Court to enter an order in the form of the Proposed Preliminary Approval Order, which is attached to the Settlement as Exhibit D.  That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, designate Plaintiffs as Class Representatives, and appoint Bursor & Fisher, P.A. as Class Counsel; (3) appoint RG/2 Claims Administration LLC as the Settlement Administrator and establish procedures for giving notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (5) set a date, time and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).  The proposed Class is so numerous that the joinder of all Class Members is impracticable; there are questions of law or fact common to the proposed Class; the proposed Class Representatives' claims are typical of those of the Class; and the proposed Class Representatives will fairly and adequately protect the interests of the proposed Class.  In addition, common issues of law and fact predominate over any questions affecting only individual members and a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy.  Issues of manageability of a nationwide class are of little

consequence as the parties now seek certification only of a settlement Class.  Further, Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the class as a whole.

The Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extended arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class Members are treated fairly under the terms of the Settlement.  Plaintiffs, by and through their counsel, have conducted an extensive investigation into the facts and law relating to this matter as set forth below and in the accompanying Krivoshey Declaration.  Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement on a fully informed basis.  It is an outstanding result Class Members.  The Court should enter the proposed order granting preliminary approval.

## II.    PROCEDURAL BACKGROUND

On March 6, 2018, Plaintiff Gabriela Bayol filed this case in this Court alleging that Health-Ade made false or misleading representations regarding the alcohol and sugar content of its kombucha beverages.  Dkt. No. 1.  On May 4, 2018, Defendants filed an Answer to the Complaint. Dkt. No.  15.  On May 10, 2018, Plaintiffs filed an Amended Class Action Complaint, adding Plaintiff Bruce Verbeck to this action.  Dkt. No. 16.  The Amended Class Action Complaint contained the same allegations as the initial Complaint, but also asserted violations of the New York General Business Law §§ 349 and 350 ("NYGBL").  The Amended Class Action Complaint also added a proposed New York subclass.  On May 24, 2018, Defendants filed an Answer to Plaintiffs' Amended Class Action Complaint.  Dkt. No. 27.

On March 23, 2018, a complaint was filed in *Gonzalez, et al. v. Health-Ade LLC*, Case No. 3:18-cv-01836 (N.D. Cal.) (hereafter, the "*Gonzalez* action").  The *Gonzalez* action is, however, significantly narrower than *Bayol* action.  Unlike the *Bayol* action, the *Gonzalez* action rested exclusively on the allegation that Health-Ade's kombucha beverages contain more sugar than listed

on the label.  No allegations regarding alcohol content were ever made.  On May 30, 2018, the Court related the *Bayol* and *Gonzalez* actions.  Dkt. No. 29.

Plaintiffs in both the *Bayol* and *Gonzalez* actions moved for appointment of their respective counsel as Interim Class Counsel.  On August 23, 2018, the Court granted the *Bayol* Plaintiffs' motion, denied the *Gonzalez* Plaintiffs' motion, and appointed Bursor & Fisher, P.A., counsel for the *Bayol* Plaintiffs, as sole Interim Class Counsel.  Dkt. No. 43.  In appointing Bursor & Fisher, P.A. as sole Interim Class Counsel, the Court found that Bursor & Fisher, P.A. "ha[s] more extensive experience in representing clients in false advertising cases, including a case factually similar to that here, and, in the instant case, have done a considerable amount of prefiling work in an effort to identify and plead potential claims." *Id.*

The Parties have engaged in significant discovery.  *See* Krivoshey Decl. ¶ 2.  The Parties exchanged and met and conferred concerning a number of discovery requests, including interrogatories and requests for production.  *See id.*  In response, Health-Ade produced critical documents concerning the merits of the case and its overall financial condition to Plaintiffs, including Health-Ade's test results concerning the alcohol and sugar content of the Subject Products.  *Id.*  Plaintiffs also deposed Health-Ade's Fed. R. Civ. P. 30(b)(6) witness regarding the sales and pricing of Health-Ade's beverages, Health-Ade's financial welfare and standing, Health-Ade's alcohol and sugar testing concerning the Subject Products, the alcohol and sugar content of Health-Ade's beverages, and the formulation of Health-Ade's beverages, including formulation changes anticipated in the future.  *Id.*  Plaintiffs reviewed all of the documents produced by Health-Ade, as well as documents and information obtained through their own research and investigation.  *Id.*  For instance, Plaintiffs commissioned separate, independent tests concerning the alcohol and sugar content of the Subject Products.  *Id.*

Counsel for Plaintiffs and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve this action.  *Id.* ¶ 3.  On June 26, 2018, the Parties participated in a full day of mediation with Jill R. Sperber, Esq. of Judicate West.  The June 26, 2018 mediation did not result in a settlement.  *Id.*  After the Court's August 23, 2018 Order appointing Bursor &

Fisher, P.A. as Interim Class Counsel, the Parties engaged in weeks of back and forth settlement negotiations. *Id*. On October 4, 2018, the Parties participated in another full day of mediation with Ms. Sperber. The Parties agreed on the material terms of this Settlement at the October 4, 2018 mediation. *Id*.

## III. THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process. First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978). If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place. *See Manual for Complex Litigation*, § 21.312 at 293-96 (4th ed. 2004).

The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992)). Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (finding that "[t]he question currently before the court is whether this settlement should be preliminarily approved" for the purposes of notifying the putative class members of the proposed settlement and proceeding with a fairness hearing, which requires the court to consider whether the settlement appears to be fair and "falls within the *range of possible approval*") (emphasis added).

1    Nevertheless, a review of the standards applied in determining whether a settlement should

2    be given *final* approval is helpful to the determination of preliminary approval.  One such standard

3    is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re*

4    *Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir.

5    1982), *cert. denied,* 459 U.S. 1217 (1983)).

6    While the Court has discretion regarding the approval of a proposed settlement, it should

7    give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler*

8    *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-

9    length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac.*

10   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure that

11   the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

12   In evaluating preliminarily the adequacy of a proposed settlement, particular attention

13   should be paid to the process of settlement negotiations.  Here, the negotiations were conducted at

14   arm's length, were non-collusive and were well informed, with an assessment of the strengths and

15   weaknesses of the claims on both sides, were conducted between counsel on both sides with

16   decades of class action experience, and utilized at the appropriate time the assistance of a well-

17   respected mediator.  Under such circumstances, the settlement is entitled to a presumption of

18   reasonableness, and the court is entitled to rely upon the opinions and assessments of counsel.

19   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

20   Beyond the public policy favoring settlements, the principal consideration in evaluating the

21   fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the

22   benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare

23   the terms of the compromise with the likely rewards of litigation."  *Protective Committee for*

24   *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

25   That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated

26   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

27   judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

28

the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

## IV.   TERMS OF THE PROPOSED SETTLEMENT

The proposed Class consists of "all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products[2] during the Class Period." Settlement at ¶ 7.  Excluded from the Class are (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class.  *See id.*

### A.   Monetary Relief for Class Members

Health-Ade has agreed to pay up to $3,997,500 to cover all claims filed by Class Members as well as the costs of settlement administration, incentive awards, and attorneys' fees, costs and expenses.  Class Members can receive a cash payment of $4.00 for each Subject Product they purchased during the Class Period up to $40 without proof of purchase.  Class Members with proof of purchase can receive a cash payment up to $80 based on the retail value of the Subject Products shown in the Proof of Purchase during the Class Period.  This is a particularly strong settlement because the average retail price of the Subject Products during the Class Period generally varied between $3.52 and $4.95.  Declaration of Gary Cooperman ("Cooperman Decl.") ¶ 5.  Indeed, the weighted average retail price of the Subject Products throughout the class period is $3.83 – less than the $4.00 offered by the Settlement.  *See* Krivoshey Decl. ¶ 5.

Due to a combination of an expansive notice program and the high cash awards provided by the Settlement, Class Counsel anticipates a high claims rate and outstanding monetary relief for the Class.  In the Court's Order Granting Bayol Plaintiffs' Motion for Appointment of Interim Class Counsel, the Court appointed Bursor & Fisher, P.A. as sole Interim Class Counsel in part because

---

[2] "Subject Products" are all products, including all flavors, under Health-Ade's kombucha product lines sold within the Class period.

of their success in a very similar case in the Central District of California.  *See* Dkt. 43, at 3.
Specifically, the Court noted that "Bayol Plaintiffs have had more experience in cases involving
false advertising claims."  *Id.*  "Further, in that regard, counsel for the Bayol Plaintiffs brought, in
2015, a nationwide class action against another manufacturer of kombucha beverages, which case
was based on statements similar to those allegedly made by Health-Ade, and wherein a settlement
providing both monetary and injunctive relief was obtained."  *Id.* (citing *Retta v. Millennium
Prods., Inc.*, 2017 WL 5479637, at *1-3, 11 (C.D. Cal. Aug. 22, 2017)).

Like here, the plaintiffs in *Retta* alleged that the defendants in that case unlawfully sold
kombucha beverages that failed to disclose that they contained more alcohol than permitted for
non-alcoholic beverages and contained more sugar than declared on the bottles' labels.  *See Retta*,
2017 WL 5479637, at *1.  Further, as here, the settlement in *Retta* settled claims on a nationwide
basis, was claims-made, and provided largely identical injunctive relief.  *See id.*, at *2.   A
comparison of the settlement agreement approved in *Retta* and the present settlement agreement
shows that the present settlement provides greater relief than the settlement in *Retta* on a per claim
basis (and a total number units sold basis), and will likely result in the entire Net Cash Amount
being exhausted:

|  | *Retta* **Settlement** | *Bayol* **Settlement** |
|---|---|---|
| Total Settlement Fund | **$8,250,000** claims-made. | **$3,997,500** claims-made. |
| Number of Units Sold | **274,715,600** bottles sold[3] | **37,950,248** bottles sold. Cooperman Decl. ¶ 6. |
| Methods of Notice | Newspaper posting in California regional edition of USA Today, toll-free phone number, website and social media banner ads, and posting on defendant's website and social media sites.[4] | Newspaper postings in the Los Angeles Times, Sacramento Bee, and the San Francisco Chronicle, toll-free phone number, press release, website and social media banners ads, keyword ads, and posting on Defendant's website and social media sites. Wickersham Decl. ¶¶ 16-29; Settlement, ¶ 48-54 |

---

[3] *Retta v. Millennium Prods., Inc.*, Case No. 15-cv-1801-PSG-AJW, Declaration of GT Dave in
Support of Motion for Preliminary Approval of Class Action Settlement, Dkt. 103-2, at ¶ 7 (C.D.
Cal. Nov. 18, 2016).
[4] *Retta*, 2017 WL 5479637, at *3.

| | | |
|---|---|---|
| Notice Reach | **87 percent reach**. Digital notice: about **15.5 million impressions**.[5] | ≈**80 percent reach**. Digital notice: over **44 million impressions**. Wickersham Decl. ¶ 17. |
| Number Claim Forms Submitted | **173,000**.[6] | ≈65,000 claims needed to exhaust Net Cash Amount, which Plaintiff's counsel believes is within the range of likely claim amounts based on experience and discussions with claims administrators.  Krivoshey Decl. ¶ 7. |
| Average Recovery Per Class Member or Claimant | ≈**$31.50** after a 10% *pro rata* diminishment due to a high number of claims.[7] | ≈**$40.00.** |
| Amount Distributed to *Cy Pres* | None | None. |
| Notice Costs | ≈**586,500**[8] | ≈**350,000-$375,000.**  Krivoshey Decl. ¶ [ ]. |
| Attorneys' Fees and Costs | **$2,202,580** in fees, of which $2,062,500 was granted to Bursor & Fisher, P.A.; $33,701.83 in costs, of which $18,121.16 was granted to Bursor & Fisher, P.A.[9] | Class Counsel will be seeking **$999,375** in fees plus costs.  To date, Class Counsel has reasonably incurred $14,243.78 in costs. (Krivoshey Decl. ¶ 8) |
| Injunctive Relief | Removal of term "antioxidant," disclaimer regarding alcohol content, warning regarding risk of leaking bottles, and periodic testing.[10] | Disclaimer regarding alcohol content, formulation change, and periodic testing. |

Based on the similarity of the settlement in *Retta*, and the number of expected claims, Class Counsel expects that the entire Net Cash Amount will be exhausted and that the Settlement provides tremendous monetary relief for the class.

**B.     Injunctive Relief**

The Settlement also provides significant injunctive relief.  For one year, Health-Ade has agreed to maintain a warning on the labels of the Subject Products stating: "Kombucha should not be consumed if left unrefrigerated for an extended period of time.  Pregnant/breast feeding?

---

[5] *Id.*
[6] *Id.*
[7] *See id.*
[8] *See Retta v. Millennium Prods., Inc.*, Case No. 15-cv-1801-PSG-AJW, Declaration of Steven Weisbrot, Esq., Dkt. 117-2, at ¶ 16 (C.D. Cal. June 19, 2017).
[9] *Retta*, 2017 WL 5479637, at *19.
[10] *Id.*, at *2.

Consult your doctor.  Due to natural fermentation, there may be trace amounts of alcohol and small pieces of culture."  Settlement at ¶ 47.  Health-Ade has also agreed to effectuate a formulation change that will control the variability of the alcohol and sugar content in its products to ensure that the declared sugar and alcohol content on such products' labels do not vary to a greater extent than allowed by federal or state labeling standards.  *Id.*  Further, Health-Ade has agreed to regularly test samples of its products using a third-party laboratory to ensure compliance with federal and state labeling standards and to ensure the accuracy of the representations regarding the sugar and alcohol content of its products.  *Id.*

### C.    Payment of Incentive Awards and Attorneys' Fees, Costs and Expenses

Subject to the Court's approval, Defendants have agreed to pay incentive awards to each Plaintiff in the amount of $2,000.  Settlement, at ¶ 55.  Both named Plaintiffs, Gabriela Bayol and Bruce Verbeck, have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaint, have been in contact with counsel frequently, and have stayed informed of the status of the action, including settlement.  *See* Declaration of Gabriela Bayol in Support of Plaintiffs' Motion for Preliminary Approval; Declaration of Bruce Verbeck in Support of Plaintiffs' Motion for Preliminary Approval.

Class Counsel will make an application to the Court for an award of attorneys' fees, costs and expenses.  Defendants have the right to challenge the amount of Plaintiffs' fees, costs and expenses and there is no agreement as to the amount of attorneys' fees, costs and expenses that will be sought by Class Counsel.

### 1.    Attorneys' Fees, Costs, and Expenses Sought

The Settlement provides for an $3,997,500 "claims-made" fund to pay all valid and timely claims, attorneys' fees and costs, incentive awards to the Class Representatives, and costs of notice and administration.  As discussed in detail below, this is an excellent result.  *See supra* Argument §§ V, VI.A.  In light of such a result, Class Counsel will request 25% of the Settlement Fund, or $999,375 in their anticipated application for attorneys' fees.  Krivoshey Decl. ¶ 8.  This method of calculating the fee award, based on a percentage of the Settlement Fund, is straightforward, is fair

under the circumstances, and is supported by the laws of this Circuit.  The 25% fee is also fair in light of the significant time Class Counsel has devoted to this case on a contingency fee basis with the threat of no recovery at all absent a successful resolution.  Class Counsel will also seek reimbursement of all reasonably expended out-of-pocket expenses.  *Id.*  To date, Class Counsel has incurred $14,243.78 in out-of-pocket expenses.

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the Settlement Fund.  In doing so, the Court must include the value of the benefits conferred to the Class, including any attorneys' fees, expenses, and notice and claims administration payments to be made. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 972–74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Stated otherwise, California courts include the requested attorneys' fees when calculating the total value of the settlement fund.  *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).  Thus, "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class …."  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554 (2009) (citation omitted).

Moreover, the Court must not consider the total monetary amount distributed to the Class; rather, the Court should only consider the amount *made available* to the Class.  As articulated in *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007), Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out.  *Id.* at 23 (citing  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available).

Here, Class Counsel expects that the settlement fund will be fully subscribed by timely and valid claims, and that there will be no difference between the amount made available and the actual payout.  Accordingly, the total value of the Settlement Fund is $3,997,500.

Class Counsel will seek the Ninth Circuit's established 25% starting benchmark of the common fund.  *Hanlon*, 150 F.3d at 1029.  The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Each of these factors shows that the Ninth Circuit's 25 percent benchmark is reasonable in this case, and that any downward adjustment would be manifestly unfair.  Here, as discussed in greater details, Class Counsel has easily satisfied each factor.

The Court may alternatively grant the requested Attorneys' fees under the lodestar method. *Hanlon*, 150 F.3d at 1029.  The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.  The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed.  *Vizcaino*, 290 F.3d at 1051.  As of March 13, 2019, Class Counsel has billed a total of 417.2 hours at a blended rate of $551.37 per hour.  Krivoshey Decl. ¶ 9.  Accordingly, Class Counsel's lodestar to date is $230,030.00.  *Id.*  Should the Court award the Ninth Circuit's 25 percent benchmark, Class Counsel would receive a multiplier of 4.34 based on

1   their current lodestar.  *Id.*  However, Class Counsel anticipates spending 100 additional hours

2   before final approval, thus lowering the lodestar multiplier to 3.50.  *Id.*  A multiplier between 3.50

3   and 4.34 is reasonable in light of the risks and benefits obtained in this action.  For instance, in a

4   historical review of numerous class action settlements, the Ninth Circuit found that lodestar

5   multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare

6   majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n.6; *see also* Alba Conte &

7   Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers

8   of 1 to 4 are frequently awarded).  State and federal courts often approve multipliers of 4 or more.[11]

9           **D.      Payment of Notice and Administrative Fees**

10          The parties propose that RG/2 Claims Administration LLC ("RG/2") act as the Settlement

11   Administrator.  RG/2 will implement the Settlement and Notice Plan agreed to by the Parties.  The

12   costs of notice and claims administration will be paid from the Settlement Fund.  Based on quotes

13   given by RG/2, Plaintiffs anticipate that the costs of notice will range between $350,000 to

14   $375,000.  Krivoshey Decl. ¶ 10.

15                  **1.      The Settlement Administration Selection Process Was**
                             **Fair and Reasonable**

16

17          The Parties have selected RG/2 through a competitive bidding process.  Plaintiff solicited

18   bids from two settlement administrators.  *Id.* 11.  The first settlement administrator estimated that

19   the cost of its notice program would be $616,610.  *Id.*  Class Counsel believed that $616,610 for a

20   notice program was too high in light of the total amount provided by the Settlement and asked the

21   same settlement administrator to make a lower bid.  *Id.*  The first settlement administrator then

22   [11] *See, e.g.*, *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of

23   4 in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y.
     Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *In re Beverly Hills Fire*

24   *Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5); *Roberts v. Texaco, Inc.*,
     979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *Bos. & Maine Corp. v. Sheehan,*

25   *Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) (approving multiplier of 6); *Muchnick*
     *v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 WL 10791, at *4 (E.D. Pa. Sept. 30, 1986)

26   (approving multiplier of 8.3 in a consumer class action); *Cosgrove v. Sullivan*, 759 F. Supp. 166
     (S.D.N.Y. 1991) (approving multiplier of 8.74); *Perera v. Chiron Corp.*, Civ. No. 95-20725-SW

27   (N.D. Cal. 1999, 2000) (approving multiplier of 9.14; cited in California Class Actions and
     Coordinated Proceedings §15.05).

28

submitted a second bid with a notice program estimated to cost $586,075.  *Id.*  Class Counsel

believed that the improved bid was still too expensive.  *Id.*  After receiving the two bids from the

first notice administrator, Class Counsel solicited a bid from RG/2.  *Id.*  RG/2 estimated that it

could administer notice in this case for a cost of roughly $350,000 to $375,000.  *Id.*

Both settlement administrators proposed very similar notice plans: both settlement

administrators proposed using an expansive banner ad campaign on Google and social media, using

regional publication notice, a toll-free telephone line, a settlement website, and providing direct

notice to any class members for whom Defendant had contact information.  *Id.* ¶ 12.  Both

settlement administrators anticipated that their respective notice programs would result in an 80

percent reach.  *Id.*  Considering that the notice programs proposed by both settlement

administrators were remarkably similar, and that both anticipated an 80 percent reach, Class

Counsel decided to engage RG/2 because it could effectively do the same job at roughly 60 percent

of the cost.  *Id.*  Class Counsel's competitive bidding process saved roughly $200,000 in notice

costs for the Class.

## V.   THE COURT SHOULD PRELIMNARILY APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this

determination, the Ninth Circuit has instructed district courts to balance several factors:  (1) the

strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the

experience and views of counsel.  *Hanlon*, 150 F.3d at 1026.[12]  Courts, however, give "proper

deference to the private consensual decision of the parties," since "the court's intrusion upon what

is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

---

[12] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  This consideration is more germane to final approval, and will be addressed at the appropriate time.

limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027; *accord*, Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate"). Here, the balance of the *Hanlon* factors readily establishes that the Settlement should be preliminarily approved.

### A.   Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

Here, as set forth in the Krivoshey Declaration, Class Counsel engaged in arms-length negotiations with Defendants' counsel, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Krivoshey Decl. ¶¶ 3, 14-15. Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured. *Id*. ¶ 15. They also recognize that they would face risks at class certification, summary judgment, and trial. *Id*. Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages. In addition, Defendants would no doubt present a vigorous defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would not be able to obtain an award of damages significantly more than achieved here absent such risks. Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation. *Id*. The Settlement also abrogates the risks that might prevent them from obtaining any relief. *Id*.

### B.   Risk of Continuing Litigation

As referenced above, proceeding in this litigation in the absence of settlement poses various

risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Even assuming that Plaintiffs were to survive summary judgment, they would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Defendants' expert witnesses.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, there is a substantial likelihood that Class Members may not be awarded significantly more than is offered to them under this Settlement on an individual basis. For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100 million.  However, weeks later, Judge Ware overturned the verdict, entering judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *Id.*  By settling, Plaintiffs and the Class avoid these risks, as well as the delays and risks of the appellate process. Here, under the Settlement, Class Members stand to recover *more than a full refund* of up to ten Subject Products purchased within the Class Period.  It is hard to imagine obtaining a recovery greater than this at trial.

### C.     Risk of Maintaining Class Action Status

In addition to the risks of continuing the litigation, Plaintiffs would also face risks in certifying a class and maintaining class status through trial.  Even assuming that the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re*

*Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Class Counsel anticipates that Defendants would likely appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date.  "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Class Members a recovery that is certain and immediate.  *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015).

### D. The Extent of Discovery and Status of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Plaintiffs, through their counsel, have conducted extensive research, discovery, and investigation during the prosecution of the Action, including, without limitation: (i) the review of documents produced by Defendants; (ii) the review of product tests initiated and paid for by Plaintiffs and Class Counsel; (iii) the review of other publicly available reports and tests concerning Defendants' products; (iv) the review of publicly available information regarding Defendants, their business practices and prior litigation involving them; and (v) the deposition of Health-Ade's Fed. R. Civ. P. 30(b)(6) witness regarding the sales and pricing of Health-Ade's beverages, Health-Ade's financial welfare and standing, Health-Ade's alcohol and sugar testing concerning the Subject Products, the alcohol and sugar content of Health-Ade's beverages, and the formulation of Health-Ade's beverages, including formulation changes anticipated in the future.  Krivoshey Decl. ¶ 2.  The parties also held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery and settlement as well as two mediations with Jill Sperber of Judicate West.  *Id.* at ¶ 3.  The Settlement is the result of fully-informed negotiations.

### E. Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties

represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Krivoshey Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

## VI. THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS, AND ENTER THE PRELIMINARY APPROVAL ORDER

### A. The Proposed Settlement Class Should Be Certified

The Class consists of "all persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period."  Settlement, at ¶¶ 7, 10.  Excluded from the Class are (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of re-sale; and (d) all persons who have filed a timely Request for Exclusion from the Class.  *Id*. ¶ 7.  This Court has not yet certified this case as a class action.  For settlement purposes, the parties and their counsel request that the Court provisionally certify the Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  For the reasons below, the Class meets the requirements of Rule 23(a) and (b).

1

2

### 1.   The Class Satisfies Rule 23(a)

#### a.   *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Class is comprised of millions of consumers who purchased the Subject Products – a number that obviously satisfies the numerosity requirement.  *See* Wickersham Decl. ¶ 13. Accordingly, the proposed Class is so numerous that joinder of their claims is impracticable.

#### b.   *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Because the commonality requirement may be satisfied by a single common issue, it is easily met.  H. Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).

There are ample issues of both law and fact here that are common to the members of the Class.  Indeed, all of the Class Members' claims arise from a common nucleus of facts and are based on the same legal theories.  The Plaintiffs allege that Defendants mislabeled their kombucha beverages by (1) labeling the products as non-alcoholic when in fact they allegedly more than the alcohol permitted for non-alcoholic beverages, and (2) allegedly understating the sugar content of the products.  Accordingly, commonality is satisfied by the existence of these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiffs' claims are brought under legal theories common to the Class as a whole. Alleging a common legal theory alone is enough to establish commonality.  *See Hanlon*, 150 F.3d

at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, all of the legal theories asserted by Plaintiffs are common to all Class Members (with the exception of New York statutory claims, which are pled only on behalf of the New York Subclass).  *See* Amended Class Action Complaint, Dkt. 16, at ¶¶ 166-133.  Thus, commonality is satisfied.

### c.     *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances.  *Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 161 (1982).

The claims of the named Plaintiffs are typical of those of the Class.  Like those of the Class, their claims arise out of the purchase of Health-Ade's kombucha beverages and the alleged mislabeling of those products.  *See* Amended Compl. ¶¶ 6-7; Bayol and Verbeck Declarations, at ¶¶ 2.  Each named Plaintiff purchased several of Health-Ade's kombucha products and was exposed to the allegedly false or misleading labels.  *See id.*  The named Plaintiffs have precisely the same claims as the Class, and must satisfy the same elements for ach of their claims.  The named Plaintiffs and all Class Members have been injured in the same course of conduct.  Therefore, Plaintiffs satisfy the typicality requirement.

### d.     *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel

1    prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958

2    (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-

3    length.  2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

4         Class Counsel have vigorously and competently pursued the Class Members' claims.  The

5    arm's-length settlement negotiations that took place and the investigation they undertook

6    demonstrate that Class Counsel adequately represent the Class.  Moreover, the named Plaintiffs

7    and Class Counsel have no conflicts of interests with the Class.  *See* Bayol and Verbeck

8    Declarations, at ¶¶ 3-9.  Rather, the named Plaintiffs, like each absent Class Member, have a strong

9    interest in proving Defendants' common course of conduct, and obtaining redress.  *See id.*  In

10   pursing this litigation, Class Counsel, as well as the named Plaintiffs, have advanced and will

11   continue to advance and fully protect the common interests of all members of the Class.  *See id.*

12   Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class

13   Counsel are active practitioners who are highly experienced in class action, product liability, and

14   consumer fraud litigation.  *See* Krivoshey Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).

15   Accordingly, Rule 23(a)(4) is satisfied.

16                    **2.    The Class Satisfies Rule 23(b)(3)**

17        In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the

18   three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research*

19   *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be

20   maintained if "the court finds that the questions of law or fact common to the members of the class

21   predominate over any questions affecting only individual members, and that a class action is

22   superior to other available methods for fairly and efficiently adjudicating the controversy."  *See*

23   Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate and encouraged

24   "whenever the actual interests of the parties can be served best by settling their differences in a

25   single action."  *Hanlon*, 150 F.3d at 1022.

26                    *a.    Common Questions of Law and Fact Predominate*

27        The proposed Class is well-suited for certification under Rule 23(b)(3) because questions

28

common to the Class Members predominate over questions affecting only individual Class Members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue.  *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including (in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27)), *inter alia*:  (1) whether Defendants' representations regarding the Subject Products were false and misleading or reasonably likely to deceive consumers; (2) whether the Subject Products are misbranded; (3) whether Defendants violated the CLRA, UCL, FAL, and NYGBL 349 and 350; (4) whether Defendants breached an express or implied warranty; (5) whether Defendants had defrauded Plaintiffs and the Class Members; and (6) whether Plaintiffs and the Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief.

> b.    *A Class Action Is the Superior Mechanism for Adjudicating This Dispute*

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

1

2

3

4

5

6

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

7

### 3. The Class Also Satisfies Rule 23(b)(2)

8

9

10

11

12

13

14

15

16

17

18

19

The proposed class is also well suited for certification under Rule 23(b)(2). *See gen. Lilly v. Jamba Juice Co*., 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) (granting preliminary approval of a Rule 23(b)(2) class of smoothie kit purchasers). *See also Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 978 (9th Cir. 2011) (explaining that the district court may certify a Rule 23(b)(2) class and a separate Rule 23(b)(3) class). As discussed above, the Settlement provides precisely the injunctive relief sought in the Complaint, consisting of, *inter alia*, changing the formulation of the Subject Products to ensure that they do not contain more alcohol and sugar than permitted by law and listed on the labels, requirements that Health-Ade regularly pay for testing of the Subject Products to be conducted by an independent laboratory, and changing the labels of the Subject Products with regards to the declared sugar content if testing shows that the declared amounts are inconsistent. Absent the Settlement, this type of injunctive relief would only be available to Class Members after prevailing at trial on the merits.

20

21

### VII. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE AND SHOULD BE APPROVED

22

23

24

25

26

27

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who

28

would be bound by a proposal."   Fed R. Civ. P Rule 23(e)(1)

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id.*  The proposed notice program here informs the Class of their rights and includes a comprehensive plan for direct notice (for those Class Members for whom Health-Ade has contact information), a settlement website, publication in the Los Angeles Times, San Francisco Chronicle, and Sacramento Bee, an expansive digital and social media notification campaign, and constitutes the best notice practicable under the circumstances.  *See gen.* Wickersham Decl. ¶¶ 5-29.

The notice accurately informs Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  Additionally, the notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel.  The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. *See* Exs. E and F to the Settlement, at Krivoshey Decl. Ex. 1.

**Internet and Social Media Banner Notice and Keyword Search Term Notice:** The internet and social media banner ad part of the notice program will collectively obtain roughly 44 million individual notice impressions.  These forms of digital notice were designed to reach persons most likely to be Class Members.  The digital and social media notice program is described in detail in the Wickersham and Resnikoff Declarations.

**Email and U.S. Mail Notice:**  A notice substantially in the form attached as Exhibit E to the Settlement shall be e-mailed or mailed to the last known e-mail address or mailing address of

any Class Member whose contact information is available to Health-Ade.  E-Mail Notice will be followed by U.S. Mail Notice to any recipient for whom E-Mail Notice is unsuccessful.

**Settlement Website:**  The parties will post a copy of the Long Form Notice (Ex. E) on a website to be maintained by the Administrator, which will additionally contain the settlement documents, an online claim form (Ex. C.), a list of important dates, and any other information to which the parties may agree.  The website shall also contain a Settlement Email Address and Settlement Telephone Number in addition to Class Counsel's contact information, where Class Members can submit questions and receive further information and assistance.

**Publication Notice:**  The parties shall supplement direct notice by publishing the Summary Notice, attached as Exhibit F to the Settlement, once a week for four consecutive weeks in the Los Angeles Times, Sacramento Bee, and San Francisco Chronicle.

**CAFA Notice:**  The parties shall also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA").  *See* Settlement at ¶ 78.

**Defendant's Website and Social Media Accounts:** Health-Ade has agreed to post notice of the settlement on its website and on its Facebook, Instagram, and Twitter accounts in the form of a link to the Settlement Website.  Of course, persons that follow Health-Ade on social media accounts are incredibly likely to also be Class Members.

These proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the proposed Settlement.  Thus, the notices and notice procedures amply satisfy the requirements of due process.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated:  March 15, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Yeremey Krivoshey*
               Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jsmith@bursor.com
            ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9112
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*