**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       jsmith@bursor.com
       ykrivoshey@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA BAYOL and BRUCE VERBECK, individually and on behalf of all others similarly situated,<br><br>                       Plaintiffs,<br><br>   v.<br><br>HEALTH-ADE LLC, and WHOLE FOODS MARKET CALIFORNIA, INC.,<br><br>                       Defendants. | Case No. 3:18-cv-01462 MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:       October 11, 2019<br>Time:      9:00 a.m.<br>Courtroom: 7, 19th Floor<br><br><br>Judge: Hon. Maxine M. Chesney |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 11, 2019 at 9:00 a.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, Courtroom 7, 19th Floor, San Francisco, California 94102 in the courtroom of Judge Maxine M. Chesney, Plaintiffs Gabriela Bayol and Bruce Verbeck ("Plaintiffs"), by and through their undersigned counsel of record, will move and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant final approval of the Stipulation of Class Action Settlement ("Settlement Agreement"), and (ii) certify the Settlement Class.

This motion is made on the grounds that final approval of the proposed class action settlement is proper, given that each required of Rule 23(e) has been met.

This motion is based on the concurrently filed Memorandum of Points and Authorities, the accompanying Declarations of Yeremey Krivoshey and Tina Chiango and attachments thereto, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated:  September 27, 2019                    Respectfully submitted,

BURSOR & FISHER, P.A.

By:      /s/ Yeremey Krivoshey
              Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
              jsmith@bursor.com
              ykrivoshey@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (SBN 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006

E-Mail:  scott@bursor.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND AND PROCEDURAL POSTURE ........................................ 2

III.    THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS .............................................................................................. 4

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................. 5

V.      THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED
        AND THE CLASS MEMBER RESPONSE HAS BEEN ENTIRELY
        POSITIVE ........................................................................................................ 6

VI.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND
        REASONABLE ................................................................................................ 9

        A.      The Settlement Was The Product Of Serious, Informed Litigation
                And Non-Collusive Negotiations ......................................................... 9

        B.      Strength Of Plaintiffs' Case ............................................................... 10

        C.      The Settlement Provides Exceptional Relief For The Class ............... 12

        D.      The Risk Of Continuing Litigation And Maintaining Class Action
                Status ................................................................................................. 14

        E.      The Response Of Class Members Has Been Universally Positive......... 14

        F.      The View Of Experienced Counsel Support Approving This
                Settlement .......................................................................................... 15

VII.    CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................... 5

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) ..................................................................... 9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........................................... 14

*Fernandez v. Victoria Secret Stores, LLC,*
2008 WL 8150856 (C.D. Cal. July 21, 2008) ............................................. 9

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................... 10

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ..................................................................... 5

*Hendricks v. Starkist Co.,*
2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .................................... 2, 3, 4

*In re Netflix Privacy Litig.,*
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................................... 6, 7

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 15

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934 (9th Cir. 2015) ....................................................................... 8

*In re POM Wonderful LLC,*
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .......................................... 11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 15

*Nur v. Tatitlek Support Services, Inc.,*
2016 WL 3039573 (C.D. Cal. Apr. 25, 2016) ........................................... 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
688 F.2d 615 (9th Cir. 1982) ........................................................... 4, 5, 10

*Red v. Kraft Foods, Inc.,*
2012 WL 8019257 (C.D. Cal. Apr.12, 2012) ............................................ 11

*Retta v. Millennium Prods., Inc.*,
    2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ................................................................. passim

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................................. passim

*Ross v. Trex Co., Inc.*,
    2013 WL 6622919 (N.D. Cal. 2013) .......................................................................................... 9

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ..................................................................................................... 9

*Wilson v. Airborne, Inc.*,
    2008 WL 3854963 (C.D. Cal., Aug. 13, 2008) ......................................................................... 8

**STATUTES**

28 U.S.C. § 1715 ................................................................................................................................ 6

New York General Business Law § 349 ........................................................................................... 2

New York General Business Law § 350 ........................................................................................... 2

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................................... 4, 5, 6

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 3, 10

Plaintiffs Gabriela Bayol and Bruce Verbeck ("Plaintiffs" or "Class Representatives") respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of Settlement Class.

## I. INTRODUCTION

On April 26, 2019, this Court granted preliminary approval to the parties' Settlement Agreement and ordered that the Settlement Administrator execute the approved Notice Plan. Order Preliminarily Approving Class Action Settlement, ECF No. 51. The tremendous success of the Notice Plan and response from Class Members confirms that the Settlement is fair and reasonable and provides outstanding relief to the Class.

Should the Court award Plaintiffs' Motion for an Award of Attorney's Fees, Costs and Expenses, and Incentive Awards for the Class Representatives, the entire $3,997,500 Settlement Fund will be exhausted. *See* Decl. of Tina Chiango ("Chiango Decl") ¶ 15. The exhaustion of an entire claims-made settlement fund of this size is no easy feat. Plaintiffs would not have been able to negotiate a settlement fund of this amount as a true "common fund," where Defendant would have been guaranteed to forfeit $3,997,500. Instead, Plaintiffs succeeded in negotiating a "claims made" $3,997,500 fund with an *outstanding notice program* – one that was clearly successful in enticing sufficient claims to exhaust the entire fund. Although the Settlement Administrator is still in the process of conducting audits to identify the total final number of timely and valid claims, the Settlement Administrator has received 130,031 timely claims. *Id*. ¶ 14. The Settlement Administrator also estimates that the notice program delivered an approximate 83% reach – far higher than is commonly required in low-cost consumer goods settlements. Despite the success of the notice program, no objections have been filed and no one has opted out. *See id*. ¶¶ 9, 12, 13.

Due to the tremendous success of the notice program and high number of claims, Class Members who submitted timely and valid claims will receive, at minimum, an average of $20.24 per person.[1] As Judge Philip S. Gutierrez noted when preliminarily approving a settlement in an

---

[1] Pursuant to the Settlement Agreement, "[i]f the aggregate value of the cash rewards claimed by Authorized Claimants pursuant to valid and timely Claims Forms exceeds the Net Cash amount, then the monetary value of the awards to be provided to each Authorized Claimant shall be reduced on a pro rata basis." Settlement Agreement, ¶ 46. As discussed herein, due to the success of the

1   analogous case concerning allegedly mislabeled kombucha beverages, such awards "vastly

2   exceed[] the potential recovery at trial based on a price premium model." *Retta v. Millennium*

3   *Prods., Inc.*, Case No. 2:15-cv-01801-PSG-AJW, ECF No. 115, at 11 (C.D. Cal. Jan. 31, 2017).

4       This Court has already preliminarily held that the Settlement is "fair, reasonable, and

5   adequate" and approved the Notice Plan, which, as discussed below, has been a resounding

6   success.  Order Preliminarily Approving Class Action Settlement, ECF No. 51, at ¶ 6.  No Class

7   Members (or any other interested parties) have objected to either the Settlement or Plaintiffs'

8   Motion for Attorney's Fees, Costs and Expenses, and Service Awards for the Class

9   Representatives.  Now that it is plain that the entire fund will be exhausted and that the Notice Plan

10   was a success, the Court should grant final approval, certify the Settlement Class, award Class

11   Counsel $999,375 (25% of the common fund) as attorney's fees, award Class Counsel $14,252.78

12   in costs and out-of-pocket expenses, award $2,000 each to Plaintiffs Bayol and Verbeck as service

13   awards, and enter the Final Approval Order in the form submitted herewith.

14   **II.    BACKGROUND AND PROCEDURAL POSTURE**

15       On March 6, 2018, Plaintiff Gabriela Bayol filed this case in this Court alleging that

16   Health-Ade made false or misleading representations regarding the alcohol and sugar content of its

17   kombucha beverages.  ECF No. 1.  On May 4, 2018, Defendants filed an Answer to the Complaint.

18   ECF No.  15.  On May 10, 2018, Plaintiffs filed an Amended Class Action Complaint, adding

19   Plaintiff Bruce Verbeck to this action.  ECF No. 16.  The Amended Class Action Complaint

20   contained the same allegations as the initial Complaint, but also asserted violations of the New

21   York General Business Law §§ 349 and 350 ("NYGBL").  The Amended Class Action Complaint

22   _____

23   notice program and the high number of claims filed, Class Members that filed timely and valid
claims will receive at least $20.24 after a *pro rata* adjustment.  However, the Settlement

24   Administrator is still in the process of reviewing the validity of the 130,031 claims.
Assuming that a percentage of the 130,031 claims are rejected, the average dollar amount Class

25   Members will recover will increase above the $20.24 figure (which assumes 100% validity of the
130,031 timely claims and the Court's approval of Plaintiffs' Motion for Attorney's Fees, Costs

26   and Expenses, and Service Awards for the Class Representatives).  Such *pro rata* adjustments are
common and are routinely approved in class action settlements.  *See, e.g., Hendricks v. Starkist*

27   *Co.*, 2016 WL 5462423, at *5, *8 (N.D. Cal. Sept. 29, 2016) (approving settlement where the
settlement provided for "up to $25 in cash" but class members in fact received $1.97 due to an

28   extremely successful notice program).

also added a proposed New York subclass.  On May 24, 2018, Defendants filed an Answer to Plaintiffs' Amended Class Action Complaint.  ECF No. 27.

On March 23, 2018, a complaint was filed in *Gonzalez, et al. v. Health-Ade LLC*, Case No. 3:18-cv-01836 (N.D. Cal.) (hereafter, the "*Gonzalez* action").  The *Gonzalez* action is, however, significantly narrower than the *Bayol* action.  Unlike the *Bayol* action, the *Gonzalez* action rested exclusively on the allegation that Health-Ade's kombucha beverages contain more sugar than listed on the label.  No allegations regarding alcohol content were ever made.  On May 30, 2018, the Court related the *Bayol* and *Gonzalez* actions.  ECF No. 29.

Plaintiffs in both the *Bayol* and *Gonzalez* actions moved for appointment of their respective counsel as Interim Class Counsel.  On August 23, 2018, the Court granted the *Bayol* Plaintiffs' motion, denied the *Gonzalez* Plaintiffs' motion, and appointed Bursor & Fisher, P.A., counsel for the *Bayol* Plaintiffs, as sole Interim Class Counsel.  ECF No. 43.  In appointing Bursor & Fisher, P.A. as sole Interim Class Counsel, the Court found that Bursor & Fisher, P.A. "ha[s] more extensive experience in representing clients in false advertising cases, including a case factually similar to that here, and, in the instant case, have done a considerable amount of prefiling work in an effort to identify and plead potential claims." *Id.*

The Parties have engaged in significant discovery.  *See* Krivoshey Decl. ¶ 2.  The Parties exchanged and met and conferred concerning a number of discovery requests, including interrogatories and requests for production.  *See id.*  In response, Health-Ade produced critical documents concerning the merits of the case and its overall financial condition to Plaintiffs, including Health-Ade's test results concerning the alcohol and sugar content of the Subject Products.  *Id.*  Plaintiffs also deposed Health-Ade's Fed. R. Civ. P. 30(b)(6) witness regarding the sales and pricing of Health-Ade's beverages, Health-Ade's financial welfare and standing, Health-Ade's alcohol and sugar testing concerning the Subject Products, the alcohol and sugar content of Health-Ade's beverages, and the formulation of Health-Ade's beverages, including formulation changes anticipated in the future.  *Id.*  Plaintiffs reviewed all of the documents produced by Health-Ade, as well as documents and information obtained through their own research and investigation.

*Id.*  For instance, Plaintiffs commissioned separate, independent tests concerning the alcohol and sugar content of the Subject Products.  *Id.*

Counsel for Plaintiffs and counsel for Defendants have engaged in substantial arm's-length negotiations in an effort to resolve this action.  *Id.* ¶ 3.  On June 26, 2018, the Parties participated in a full day of mediation with Jill R. Sperber, Esq. of Judicate West.  The June 26, 2018 mediation did not result in a settlement.  *Id.*  After the Court's August 23, 2018 Order appointing Bursor & Fisher, P.A. as Interim Class Counsel, the Parties engaged in weeks of back and forth settlement negotiations.  *Id.*  On October 4, 2018, the Parties participated in another full day of mediation with Ms. Sperber.  The Parties agreed on the material terms of this Settlement at the October 4, 2018 mediation.  *Id.*

Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on March 15, 2019.  ECF No. 47.  The Court held a hearing, and granted preliminary approval on April 26, 2019.  ECF No. 51.  The Court's preliminary approval order approved the proposed Notice Plan and directed the parties and the Settlement Administrator to provide notice pursuant to the entered schedule.  As discussed herein, the Notice Plan has been fully executed and has been a tremendous success.

On May 24, 2019, Plaintiffs filed their Motion for an Award of Attorney's Fees, Costs and Expenses, and Service Awards for the Class Representatives.  The motion is set for hearing on October 11, 2019, concurrently with the Final Approval hearing.  The motion is unopposed (even though Defendants had a right to oppose it), and no Class Members have objected to the motion.

On September 17, 2019, pursuant to the Court's April 26, 2019 Order, the Settlement Administrator filed a declaration reporting that it has received 130,031 timely filed claims, and zero opt-outs.  ECF No. 54, ¶¶ 4-5.

## III.    THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

"The claims, issues, or defenses of a certified class may be settled … only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers*

*for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  To assess whether a proposed settlement comports with Rule 23(e), a district court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  No single factor is the "most significant." *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

In its Order Preliminarily Approving Class Action Settlement, the Court certified the following class for settlement purposes:

> [A]ll persons in the United States and United States Territories who purchased at retail one or more of the Subject Products during the Class Period. Specifically excluded from the Class are: (a) Defendants and their employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors and assigns; (b) the judges to whom the Action has been or is assigned and any members of their immediate families; (c) those who purchased the Subject Products for the purpose of resale; and (d) all persons who have filed a timely Request for Exclusion from the

> Class. The "Subject Products" are all products sold by Defendants during the Class Period under Health-Ade's kombucha product lines, including but not limited to the following flavors: Beet; Blood Orange-Carrot-Ginger; California Grape; Cayenne Cleanse; Ginger-Lemon; Holiday Cheers; Jalapeño-Kiwi-Cucumber; Maca-Berry; Matcha+Cold Brew Coffee; The Original; Pink Lady Apple; Plum; Pomegranate; Power Greens; Reishi-Chocolate; and Sweet Thorn.

ECF No. 51, at ¶ 4. The Court found that "(a) the Class certified herein numbers at least in the tens of thousands of persons, and joinder of all such persons would be impracticable; (b) there are questions of law and fact that are common to the Class, and those questions of law and fact common to the Class predominate over any questions affecting any individual Class Member; (c) the claims of the Plaintiffs are typical of the claims of the Class they seek to represent for purposes of settlement; (d) a class action on behalf of the Class is superior to other available means of adjudicating this dispute; and (e) as set forth below, Plaintiffs and Plaintiffs' Counsel are adequate representatives of the Class." *Id*. ¶ 3. Notably, no objections have challenged that conclusion. The Court may rely on the same rationale as explained in its Order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

## V.    THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE CLASS MEMBER RESPONSE HAS BEEN ENTIRELY POSITIVE

In its April 26, 2019 Order, after an evaluation of the Settlement's proposed Notice Plan, the Court found "the form, content, and method of disseminating notice to the Class" comply with Rule 23(c)(2), Rule 23(e), 28 U.S.C. § 1715, and the Due Process Clause of the United States Constitution because "they are the best practicable means of notice under the circumstances, and are reasonably calculated, under all the circumstances, to apprise the members of the Class of the pendency of the Action, the terms of the Settlement, and their right to object to the Settlement or exclude themselves from the Class." ECF No. 51 ¶ 9(c). "The Court further [found] that all of the

notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices." *Id*.

Each of the Settlement's Notice provisions was implemented as set out in the Settlement and instructed by the Court. Indeed, as Class Counsel predicted at the preliminary approval hearing, the Notice program has yielded more than the roughly 65,000 claims needed to exhaust the Net Cash Amount of the Settlement, guaranteeing that the entire $3,997,500 Settlement Fund will be exhausted. *See* Plaintiffs' Motion for Preliminary Approval, ECF No. 47, at 9:2-3 (Table) ("≈65,000 claims needed to exhaust Net Cash Amount, which [Class Counsel] believes is within the range of likely claim amounts based on experience and discussions with claims administrators"); Krivoshey Decl., Ex. 1, 4/19/2019 Hearing Transcript, at 12:9-14 ("But I think this is a better notice plan [than the notice plan in *Retta v. Millennium Prods., Inc*] and is going to be more effective, which is why we think we're going to get more. And I think the 65,000 number, we might even surpass that. I don't want to overpromise anything Your Honor, but I think [we] might do better than that here because I think this is a better notice plan."). The Settlement Administrator received 130,031 timely filed Claims and is currently reviewing the validity of those claims. Chiango Decl. ¶ 14.

The Notice Plan has been a resounding success on every level. To start, every Class member for whom Defendant had contact information received direct notice via email (where available) or mail. Chiango Decl. ¶¶ 6-8. The internet banner notice portion of the Notice Plan ran for 60 days and served a total of 47,356,588 impressions, more than three million more impressions than anticipated by the notice administrator at preliminary approval. *Compare* 3/11/2019 Declaration of William W. Wickersham Regarding Class Notice Plan, ECF No. 47-5, at ¶¶ 19, 29, *with* Chiango Decl. ¶ 9. The social media portion of the notice program delivered a total of 10,746,366 impressions, exceeding the 10.4 million anticipated at preliminary approval. *Id*. In sum, the social media and internet banner portions of the Notice Plan, which constitute the bulk of the entire Notice Plan, were over 7% more successful than anticipated.

To satisfy the notice requirements of the CLRA, the notice administrator arranged for the Short Form Notice to be published in four separate issues of the Los Angeles Times, the Sacramento Bee, and the San Francisco Chronicle. Chiango Decl. ¶ 11.

In addition, Defendant posted a link to the settlement website on its website and social media accounts, which reach thousands of consumers who are most likely to purchase the Subject Products. Krivoshey Decl. ¶ 5 (Class Counsel confirmed that Defendant complied with this requirement).

Further, as required by the April 26, 2019 Order, the notice administrator (1) timely established and began operating the Settlement Website and Toll-Free Telephone Number by May 24, 2019; (2) timely published the Long Form Notice on the Settlement Website; (3) timely uploaded the Settlement Agreement, the Class Action Complaint, the Amended Class Action Complaint, the Order Preliminarily Approving Class Action Settlement, Plaintiff's Motion for an Award of Attorney's Fees, Costs and Expenses, and Incentive Awards for the Class Representatives, and the Declaration of L. Timothy Fisher in Support of Plaintiffs' fee and expenses motions; (4) and timely uploaded the Claim Form (and allowed Class Members to files claims through the website). Chiango Decl. ¶¶ 4-5.

The notice administrator estimates that the notice program delivered an approximate 83% reach, which exceeds the already outstanding 80% reach contemplated in Mr. Wickersham's March 11, 2019 declaration. *See* ECF No. 47-5 ¶ 17; Chiango Decl. ¶ 9. The calculated 83% reach does not even account for email notice, print publications in the Los Angeles Times, the Sacramento Bee, and the San Francisco Chronicle, the settlement website, the toll-free hotline, posting of a link to the Settlement Website on Defendant's website and social media platforms, and release of the Summary Notice on the PR Web. *Id*. ¶¶ 4-8. The 83% reach is the hallmark of a great notice program, and certainly within the range of approval. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945–46 (9th Cir. 2015) (affirming approval of notice plan based on rental records using both regular and email); *Wilson v. Airborne, Inc.,* 2008 WL 3854963, at * 4 (C.D. Cal., Aug. 13, 2008) (approving program reaching 80% of Class Members); *Federal Judicial*

*Center Judges' Class Action Notice and Claims Process Checklist*, at www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ("A high reach, e.g. between 70-95% can often reasonably be reached by a notice campaign"); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (notice need not actually reach every single class member; instead, the notice need only reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections).

The success of the Notice Plan is also obvious based on the fact that, should the Court grant Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses, and Incentive Awards for the Class Representatives, the entire $3,997,500 Settlement Fund will be exhausted. Although the Settlement Administrator is still in the process of conducting audits to identify the total final number of timely and valid claims, it has received 130,031 timely Claim Form submissions. Further, despite the fact that the banner ad portion of the Notice Plan served more than 47 million impressions, to date, not a single person has objected to any part of the Settlement. No one has asked to be excluded either.

## VI.     THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

### A.     The Settlement Was The Product Of Serious, Informed Litigation And Non-Collusive Negotiations

Here, there is no question that the Settlement was arrived at through genuine arm's-length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]." *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *6 (C.D. Cal. Aug. 22, 2017). Accordingly, it is entitled to a presumption of reasonableness. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *Ross v. Trex Co., Inc.*, 2013 WL 6622919, at *3 (N.D. Cal. 2013); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *see also Rodriguez v. West Publishing Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]).).

As discussed above, and in their motion seeking preliminary approval, the Settlement is the result of arm's-length negotiations that spanned many months.  The parties participated in a full day of mediation with Jill R. Sperber, Esq. of Judicate West on June 26, 2018.  Krivoshey Decl. ¶ 3.  The June 26, 2018 mediation did not result in a settlement.  The parties resumed settlement negotiations following the Court's August 23, 2018 Order appointing Bursor & Fisher, P.A. as Interim Class Counsel, and spent weeks negotiating a potential settlement.  Ultimately, on October 4, 2018, the parties agreed on the material terms of the Settlement at another full-day mediation with Ms. Sperber.

Further, the parties engaged in extensive discovery, allowing for an analysis of the respective strengths and weaknesses of their respective positions.  They exchanged formal written discovery.  Krivoshey Decl. ¶ 2.  Plaintiffs were able to obtain information regarding Defendants' test results concerning the alcohol and sugar content of the Subject Products, the formulation of the Subject Products, anticipated formulation changes in the future, sales and pricing information, and Health-Ade's financial welfare.  *See id*.  Plaintiffs also deposed Health-Ade's Fed. R. Civ. P. 30(b)(6) witness regarding each of the above topics.  *See id*.  Plaintiffs also commissioned their own, independent tests concerning the alcohol and sugar content of the Subject Products.  *Id*.

As in *Retta*, "Class Counsel did not negotiate the Settlement Agreement in a vacuum, but were able to fully consider the strengths and weaknesses of Plaintiffs' claims."  *Retta*, 2017 WL 5479637, at *6.  "Accordingly, this factor weighs in favor of granting final approval."  *Id*.

**B.    Strength Of Plaintiffs' Case**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).  Here, the settlement negotiations were hard-fought, requiring

multiple mediation sessions over several months, with both parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Plaintiffs believe that the Settlement is an outstanding result considering the issues addressed below.

In false or misleading advertising cases concerning beverages or foods, plaintiffs are typically foreclosed from full-refund theories of damages at class certification.  *See, e.g., In re POM Wonderful LLC*, 2014 WL 1225184, at *2-*3 (C.D. Cal. Mar. 25, 2014) (explaining that a full refund damages model is unavailable where the beverage at issue provided class members with benefits in the form of calories, hydration, vitamins, and minerals); *Red v. Kraft Foods, Inc.,* 2012 WL 8019257, at *11 (C.D. Cal. Apr.12, 2012).  Here, the Subject Products contain multiple vitamins, enzymes and probiotics, and provide hydration and calories.  Although Plaintiffs believe a full-refund damages model would be viable, Defendants would have strong arguments against it.

Further, although Plaintiffs believe that proving price premium damages would be possible here, there is no guarantee that the ultimate price premium proved would justify the risk of further litigation.  *See gen. Retta*, 2017 WL 5479637, at *4 (discussing potential hurdles of litigating kombucha alcohol and sugar claims and holding that, in light of such hurdles, "this factor weighs in favor of approving the Settlement Agreement").  Even if Plaintiffs were to establish an alcohol labeling problem, the alcohol levels of kombucha products necessarily vary over time due to an ongoing fermentation process.  Thus, the amount of alcohol in the accused products varies greatly between purchases, with some Class Members (according to Defendants) potentially receiving kombucha beverages below and above the 0.5% alcohol by volume threshold.  Further, the alcohol labeling claims would likely devolve into an uncertain "battle of the experts."

Plaintiffs would face similar issues with their claims concerning the alleged high amounts of sugar in the Subject Products.  The Subject Products contain varying amounts of sugar, and, due to the natural fermentation of the products,[2] the amount of sugar varies over time, such that Plaintiffs would have to present a viable damages theory in the face of likely evidence that some Class Members were not injured at all, while others may have been depending on the time the

---

[2] The bacteria in the Subject Products allegedly "eats" the sugar and converts it into alcohol.

Subject Products remained on the shelves.  Further, these inconsistencies would present issues as to commonality and predominance at class certification.

Defendants vigorously deny Plaintiffs' allegations and assert that neither Plaintiffs nor the Class suffered any harm or damages.  In addition, Defendants would no doubt present a robust defense at trial, and there is no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly higher than achieved here absent such risks.  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Class with an outstanding opportunity to obtain significant relief at this stage in the litigation.  The Settlement also abrogates the risks that might prevent them from obtaining *any* relief.

### C.    The Settlement Provides Exceptional Relief For The Class

In the Court's Order Granting Bayol Plaintiffs' Motion for Appointment of Interim Class Counsel, the Court appointed Bursor & Fisher, P.A. as sole Interim Class Counsel in part because of their success in a very similar case in the Central District of California.  *See* ECF 43, at 3. Specifically, the Court noted that "Bayol Plaintiffs have had more experience in cases involving false advertising claims."  *Id.*  "Further, in that regard, counsel for the Bayol Plaintiffs brought, in 2015, a nationwide class action against another manufacturer of kombucha beverages, which case was based on statements similar to those allegedly made by Health-Ade, and wherein a settlement providing both monetary and injunctive relief was obtained."  *Id.* (citing *Retta*, 2017 WL 5479637, at *1-3, 11).  Judge Gutierrez granted final approval in the *Retta* case on August 22, 2017, finding in part that the $8.25 million settlement was a reasonable amount in light of the "uncertainties associated with litigating this case through trial" and potential recovery at trial, assuming plaintiffs were successful in getting to trial in the first place.  *See Retta*, 2017 WL 5479637, at *5.

As discussed at preliminary approval, however, the present Settlement made far more money available on per-unit-sold basis than the settlement in *Retta*.  The Settlement in *Retta* made available a fund of $8,250,000 to resolve claims concerning 274,715,600 bottles of the kombucha products sold.  *Retta v. Millennium Prods., Inc*., Case No. 15-cv-1801-PSG-AJW, Declaration of GT Dave in Support of Motion for Preliminary Approval of Class Action Settlement, ECF 103-2,

at ¶ 7 (C.D. Cal. Nov. 18, 2016).  Here, the Settlement Agreement makes available a $3,997,500 fund to resolve claims concerning 37,950,248 bottles sold.  Cooperman Decl. ¶ 6.  On a per-unit-sold basis, the present Settlement provides **333.33%** more cash than the settlement in *Retta*.  In *Retta*, class members could claim up to $35.00 in cash or vouchers without proof of purchase, and $60.00 in cash or vouchers with proof of purchase.  *Retta*, 2017 WL 5479637, at *2.  Here, Class Members could claim up to $40.00 in cash without proof of purchase, and $80.00 with proof of purchase.  Considering that the Settlement Agreement is, in effect, 333.33% better than the *Retta* settlement, "this factor too counsels in favor of approving the settlement."  *Retta*, 2017 WL 5479637, at *6.

Further, "claims-made settlements … are routinely approved by the Ninth Circuit and Courts in California."  *See Nur v. Tatitlek Support Services, Inc*., 2016 WL 3039573, at *3 (C.D. Cal. Apr. 25, 2016) (characterizing a string-cite of 16 cases as "only a small sample of those cases").  Here, however, there will be no reversion of any kind to Defendants should the Court grant Class Counsel's motion for attorney's fees and costs.  In other words, while styled as a "claims-made" settlement, the Settlement is more analogous to a true common fund settlement, as the entire $3,997,500 fund will be exhausted.  Accordingly, the Court should have no concerns about the $3,997,500 figure being "illusory" based on the claims-made structure of the Settlement.  Every single dollar made available by the fund will be distributed.

The Settlement also provides substantial and meaningful injunctive relief.  Health-Ade has agreed to (1) maintain on the labels of the Subject Products the following warning statement: "Kombucha should not be consumed if left unrefrigerated for an extended period of time.  Pregnant/breast feeding?  Consult your doctor.  Due to natural fermentation, there may be trace amounts of alcohol and small pieces of culture"; (2) effectuate a formulation change that will control the variability of the alcohol and sugar content in its products to ensure that the declared sugar and alcohol content on such products' labels do not vary to a greater extent than allowed by federal or state labeling standards; and (3) regularly test samples of its products using a third-party laboratory to ensure compliance with federal and state labeling standards and to ensure the

accuracy of the representations regarding the sugar content of its products.  Although it is difficult

to give a dollar amount to the value of the injunctive relief, the expansive injunctive relief also

supports granting final approval.

### D.     The Risk Of Continuing Litigation And Maintaining Class Action Status

As referenced above, proceeding in this litigation in the absence of settlement poses various

risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or

losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *See*

*Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4

(N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of

continuing with the litigation and will produce a prompt, certain, and substantial recovery for the

Plaintiff class.").  *See also Retta*, 2017 WL 5479637, at *5 ("the risks, expense, and duration of

continued litigation supports final approval of this settlement").  Even assuming that Plaintiffs were

to survive summary judgment, they would face the risk of establishing liability at trial in light of

conflicting expert testimony between their own expert witnesses and Defendants' expert witnesses.

In this "battle of experts," it is virtually impossible to predict with any certainty which testimony

would be credited, and ultimately, which expert version would be accepted by the jury.  The

experience of Class Counsel has taught them that these considerations can make the ultimate

outcome of a trial highly uncertain.  Moreover, even if Plaintiffs prevailed at trial, in light of the

possible damage theories that could be presented by both sides, there is a substantial likelihood

based on the above analysis that Class Members may be awarded significantly less than is offered

to them under this Settlement on an individual basis.  By settling, Plaintiffs and the Class avoid

these risks, as well as the delays and risks of the appellate process.

### E.     The Response Of Class Members Has Been Universally Positive

The objection and opt-out deadlines lapsed on August 27, 2019.  Despite an expansive

notice program that resulted in 130,031 timely claims, not a single class member opted out of the

settlement and not a single class member objected.  Chiango Decl. ¶¶ 12-13.  The fact that there

were no opt-outs or objections is particularly remarkable here because, as discussed above, there

was a competing group of plaintiffs in the related *Gonzalez* action, represented by different law firms, that sought appointment of their counsel as interim-class counsel.  Counsel in the *Gonzalez* action "represent[ed] … 23 plaintiffs from 22 states," and purportedly "[v]etted [t]housands of Class Members."  Plaintiffs' Opposition and Cross-Motion for Appointment of Interim Class Counsel, and Memorandum of Law in Support, ECF No. 41, at 1, 5.  And yet, despite being represented by or speaking with counsel, none of these "thousands" of Class Members opted out of the Settlement or objected to it in any respect.  Such an overwhelmingly positive response from Class Members supports final approval.  *See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### F.    The View Of Experienced Counsel Support Approving This Settlement

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation, and, in particular, more class action experience with kombucha products than any other plaintiffs' law firm in the country.  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

For all the foregoing reasons, the Settlement is fair, adequate, and reasonable, and should be preliminarily approved.

1

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the Settlement Agreement, certify the Settlement Class, grant Plaintiffs' Motion for Attorney's Fees, Costs and Expenses, and Service Awards to the Class Representatives, and enter the Final Approval Order in the form submitted herewith.

Dated:  September 27, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___*/s/ Yeremey Krivoshey*___
        Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           jsmith@bursor.com
           ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SBN 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

*Attorneys for Plaintiffs*